**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UPMC MCKEESPORT, | ) | |
| | ) | |
| Plaintiff, | ) | 2:22-cv-178 |
| | ) | |
| v. | ) | |
| | ) | Judge Marilyn J. Horan |
| SERVICE EMPLOYEES INTERNATIONAL | ) | |
| UNION NATIONAL INDUSTRY PENSION | ) | |
| FUND and SEIU HEALTHCARE | ) | |
| PENNSYLVANIA CTW, CLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff, UPMC McKeesport, brings a one-count Amended Complaint against

Defendants, Service Employees International Union National Industry Pension Fund (the

Pension Fund) and SEIU Healthcare Pennsylvania CTW, CLC (the Union), pursuant to Section

301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.  (ECF No. 33).

UPMC McKeesport's first Complaint brought claims against the Defendants, seeking

declaratory judgment and claims for equitable estoppel, laches, dereliction of duty, and fraud in

the execution of the Collective Bargaining Agreements (CBAs) between UPMC McKeesport and

the Union.  (ECF No. 1).  The Defendants filed a Motion to Dismiss the Complaint.  (ECF No.

23).  On May 23, 2022, this Court granted Defendants' Motion to Dismiss, but granted UPMC

McKeesport leave to amend with regard to its demand for arbitration at Count IV.  (ECF No. 31,

at 8).

Presently before the Court is Defendants' Motion to Dismiss UPMC McKeesport's

Amended Complaint and accompanying brief.  (ECF Nos. 34 & 35).  UPMC McKeesport filed

its Response, (ECF No. 37), and Defendants filed their Reply, (ECF No. 38).  For the reasons

stated herein, Defendants' Motion to Dismiss will be granted.

## I.    Facts

UPMC McKeesport and the Union negotiated and entered into a series of CBAs, the first

of which began on December 21, 2008.  (ECF No. 33, ¶¶ 8-11).  Relevant to this dispute, UPMC

McKeesport and the Union negotiated and entered into a CBA, effective from July 1, 2015 until

March 31, 2018.  (ECF No. 33, ¶ 10).  After such CBA expired, UPMC McKeesport and the

Union again negotiated and entered into a CBA, effective from April 1, 2018 until March 31,

2021.  (ECF No. 33, ¶¶ 10-11).  The relevant language of the two CBAs at issue is the same.

The Amended Complaint alleges that, pursuant to the relevant CBAs, UPMC

McKeesport agreed to make contributions to the Pension Fund in the amounts set forth within

said CBAs.  (ECF Nos. 33, ¶ 12; 33-3, at 16-17; 33-4, at 16).  Article 2, Section 1 provides that

newly hired employees do not become members of the Union until the completion of their

probationary period.  (ECF Nos. 33, ¶ 14; 33-3, at 6; 33-4, at 6).  Article 12, Section 8 provides

that newly hired nurses shall serve in a six-month probationary period.  (ECF Nos. 33, ¶ 15; 33-

3, at 14; 33-4, at 13).  The Amended Complaint further alleges that, since at least 2008, UPMC

McKeesport and the Union agreed and performed pursuant to the CBAs, such that UPMC

McKeesport began making pension contributions to the Pension Fund as soon as each covered

nurse completed his or her probationary period.  (ECF No. 33, ¶ 17).

In 2019, the Pension Fund conducted an audit of the hospital's contributions to the

Pension Fund for the time period January 1, 2016 through December 31, 2018.  (ECF No. 33, ¶

24).  The Amended Complaint alleges that UPMC McKeesport had submitted monthly reports to

the Pension Fund, and that said reports reflected each covered nurse's date of hire and that

pension contributions to the Pension Fund began for each nurse after he or she had completed the required six-month probationary period.  (ECF No. 33, ⁋ 28).  This process of payment and monthly reporting occurred between UPMC McKeesport and the Pension Fund from December 2011 through at least March 31, 2021.  (ECF No. 33, ⁋ 28).  On November 13, 2019, the Pension Fund issued its audit report, wherein it claimed that UPMC McKeesport owed the Fund $288,217.67, plus $64.57 in daily interest, from December 14, 2019 forward.  (ECF No. 33, ⁋⁋ 29-30).  The Pension Fund claims that UPMC McKeesport was obligated to make Pension Fund contributions from each covered nurse's first day of work, rather than beginning after the completion of the six-month probationary period.  (ECF No. 33, ⁋ 31).  The Pension Fund also claims that, since at least 2008, it has prohibited unions and employers from entering into collective bargaining agreements that allows for probationary periods longer than ninety days from the employee's first day of work and that it has prohibited pension contributions from beginning after a ninety-day probationary period.  (ECF No. 33, ⁋ 32).

Article 4, Section 10 provides that "[t]he Hospital also has the right to file grievances, and any grievance in which the Hospital is the complainant shall be filed with the Union at Step 3."  (ECF Nos. 33-3, at 10; 33-4, at 10).  Article 4, Section 3 describes the grievance and arbitration procedures.  (ECF Nos. 33-3, at 7-9; 33-4, at 7-10).  At Step 3, the grievant may submit written requests for information, upon which the other party is required to provide a written response to the grievant.  (ECF Nos. 33-3, at 8; 33-4, at 8).  Under the 2015 CBA, if the grievant appeals the determination made at Step 3, the claim will then proceed to arbitration at Step 4.  (ECF Nos. 33-3, at 8-9).  Under the 2018 CBA, if the grievant appeals the determination made at Step 3, the claim will then proceed to mediation at Step 4 and arbitration at Step 5.  (ECF Nos. 33-3, at 8-9; 33-4, at 8-10).  Article 4, Section 11 provides that "[a]ny grievance filed

pursuant to Section 8, 9, or 10 of this Article must be filed within fourteen (14) calendar days of the incident giving rise to the grievance." (ECF Nos. 33-3, at 10; 33-4, at 10). The Amended Complaint alleges that "[a]t no time from 2008 to the present has any employee or Union filed an individual or class grievance challenging the length of the probationary period or the parties' agreement relating to the timing for making pension contributions to the Fund, which was the exclusive remedy for any alleged violation of the CBA." (ECF No. 33, ¶ 23).

Effective April 1, 2021, UPMC McKeesport and the Union entered into a CBA, which provides for a ninety-day probationary period, with contributions to the Pension Fund beginning after the employee has completed his or her probationary period. (ECF No. 33, ¶ 35). On February 1, 2022, the same day that UPMC McKeesport filed the present lawsuit, the Defendants filed a lawsuit in the District Court of the District of Columbia against UPMC McKeesport, wherein the Defendants claim the allegedly past-due $288,217.67, plus interest, that is allegedly owed under the 2015 and 2018 CBAs. (ECF No. 24, at 7).

## II. Standard of Review

### A. 12(b)(1) Standard

A court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may be presented by the movant as either a facial or factual challenge to the court's subject matter jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a factual attack, the court may consider evidence outside the pleadings. *Id.* (citing *Mortensen*, 549 F.2d at 891). At "issue in a factual 12(b)(1)

4

motion is the trial court's jurisdiction[,] its very power to hear the case." *Mortensen*, at 891.  The

plaintiff has the burden of establishing that the court has subject matter jurisdiction.  *Id.*

### B.   12(b)(6) Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir.

2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court clarified

that this plausibility standard should not be conflated with a higher probability standard.  *Iqbal*,

556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real

Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).  "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S.

at 678.  "Factual allegations of a complaint must be enough to raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555.

A pleading party need not establish the elements of a *prima facie* case at this stage; the

party must only "put forth allegations that 'raise a reasonable expectation that discovery will

reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213

(3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa.

June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

### III.   Discussion

#### A.  Subject Matter Jurisdiction

Defendants argue that the Court does not have subject matter jurisdiction over this claim because the Amended Complaint does not allege any breach of the relevant CBAs, as is required by the LMRA. (ECF No. 35, at 11). UPMC McKeesport argues that this Court has subject matter jurisdiction over its claim because it has been accused of breaching the relevant CBAs, which satisfies the LMRA's jurisdictional requirements. (ECF No. 37, at 3-5)

Section 301 of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185. Section 301 of the LMRA only provides federal jurisdiction over lawsuits "filed *because a contract has been violated*." *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto. Implement Workers of Am.*, 523 U.S. 653, 657 (1998) (emphasis in original). While the Third Circuit Court of Appeals has not directly addressed this issue, the Ninth Circuit Courts of Appeals has affirmed the dismissal of a similar complaint for lack of subject matter jurisdiction where the plaintiff had not alleged the breach of any collective bargaining agreement and the plaintiff had only been accused of violating the collective bargaining agreement. *Nu Image Inc. v. Int'l All. of Theatrical Stage Emps.*, 893 F.3d 636, 641 (9th Cir. 2018). The Seventh Circuit Courts of Appeals, however, has found that a federal district court has subject matter jurisdiction under the LMRA where a plaintiff seeking declaratory judgment has been accused of violating a collective bargaining agreement. *J.W. Peters, Inc. v. Iron Workers Local 1*, 398 F.3d 967, 973 (7th Cir. 2005).

Here, UPMC McKeesport does not allege in its Amended Complaint that any of the parties in the lawsuit violated the relevant CBAs. This Court does not have subject matter jurisdiction over a complaint brought pursuant to the LMRA where there have been no allegations of a breach of contract. Although alluded to in UPMC McKeesport's brief, there are no allegations in the Amended Complaint that the hospital has been accused of violating the CBAs, other than a statement that "the Fund claims that McKeesport Hospital owes the Fund

$288,217.67, plus $64.57 in daily interest for each after December 14, 2019, for failing to make contributions for all hours worked during the Audit Period." (ECF No. 33, ⁋ 30). Although UPMC McKeesport has cited authority from the Eastern and Western Districts of Pennsylvania in support of its claim and argues that this court has subject matter jurisdiction in this case, those cases are distinguishable both factually and procedurally. (ECF No. 37, at 5). Absent allegations that there has been a breach of the CBAs or allegations that there has been an accusation of a breach of the relevant CBAs, this Court lacks subject matter jurisdiction over the present action. UPMC McKeesport was granted leave to amend, but it did not cure this defect. As such, Defendants' Motion to Dismiss is granted. Although the Court finds that it lacks subject matter jurisdiction over the case, the Court will proceed to analyze the remainder of the parties' arguments. The Court will address whether UPMC McKeesport will be granted leave to amend after full analysis.

### B. Standing

Defendants argue that UPMC McKeesport lacks standing because the hospital only seeks declaratory relief to adjudicate past conduct between the parties. (ECF No. 35, at 12). Plaintiff argues that it has standing because it seeks prospective relief to enforce the CBAs' grievance and arbitration process. (ECF No. 37, at 5).

"To satisfy the standing and 'case or controversy' requirements of Article III, a party seeking a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Blakeney v. Marsico*, 340 F. App'x 778, 780 (3d Cir. 2009) (citations and internal quotations omitted). A declaratory judgment "is inappropriate solely to adjudicate past conduct" and is not "meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006). Additionally,

8

the anticipation of defenses in future litigation is insufficient to create a justiciable controversy and is an inappropriate use of the declaratory judgment procedure. *See Calderon v. Ashmus*, 523 U.S. 740, 747 (1998); *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323 (3d Cir. 2014).

Presently, UPMC McKeesport's Amended Complaint seeks only to enforce the grievance and arbitration process contained within the CBAs. A court order to enforce said CBA process does not adjudicate past conduct; rather, it addresses future conduct of the parties by way of injunctive relief. As such, the Court finds that UPMC McKeesport has standing with regard to its claim seeking to enforce the CBAs' grievance and arbitration provisions.

### C. The Pension Fund as a Party to the CBAs

Defendants next argue that the Pension Fund is not subject to the CBAs' grievance and arbitration procedures because it is not a party to the CBAs. (ECF No. 35, at 14). UPMC McKeesport argues that the Pension Fund can be forced into arbitration under the CBAs because the Pension Fund relies on the CBAs to recover the allegedly past due funds. (ECF No. 37, at 6).

The Supreme Court has held that the general presumption of arbitrability in labor disputes does not apply when determining whether a pension fund is bound to enforce the fund's rights through a CBA arbitration provision. *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 371-75 (1984). As such, the grievance and arbitration procedures in a CBA do not apply where a pension fund is a third-party beneficiary unless either the CBA or the pension fund's trust agreement expressly binds the pension fund to the CBA's grievance provisions. *Id.*

UPMC McKeesport has not referenced any provision within either of the relevant CBAs or the Trust Agreement that expresses any intent by the parties to require the Pension Fund to participate in the CBAs' grievance and arbitration provisions. Under Supreme Court precedent, silence cannot be used to demonstrate an intent by a pension fund to submit to a CBA's

9

arbitration provisions without an agreement between an employer and a union.  The CBAs do not explicitly express that the parties intended the Pension Fund to be a necessary party to any UPMC McKeesport and Union CBA grievance and arbitration procedures.  As such, injunctive relief to compel the Pension Fund to submit to arbitration is not an available remedy in this case. Thus, UPMC McKeesport's claim against the Pension Fund fails.  The Pension Fund's Motion to Dismiss will be granted.  The Court will hereinafter address whether UPMC McKeesport will be granted leave to amend its claim against the Pension Fund.

### D.  Exhaustion of Administrative Remedies

Finally, Defendants argue that UPMC McKeesport's Amended Complaint contains no allegations that it filed a grievance against the Union to address the unpaid Pension Fund contributions or that the Union refused to submit to such grievance proceedings.  (ECF No. 35, at 17).  UPMC McKeesport does not address Defendants' exhaustion of administrative remedies argument it its brief.

UPMC McKeesport alleges that, on November 19, 2019, it first became aware of the Pension Fund's claim that it owed contributions for covered nurses.  (ECF No. 33, ⁋ 41). However, the Amended Complaint contains no allegations that UPMC McKeesport filed any grievance as per the CBAs' grievance and arbitration provisions in response to the Pension Fund's contribution claim.  Upon analysis of the CBAs' pertinent language, the Court concludes that the terms of the CBAs' grievance and arbitration provisions are ambiguous for the purpose of deciding the present Motion to Dismiss.  The CBAs state that "[t]he Hospital also has the *right* to file grievances."  (ECF Nos. 33-3, at 10; 33-4, at 10) (emphasis added).  The CBAs also state that "[a]ny grievance filed pursuant to Section 8, 9, or 10 of this Article *must* be filed within fourteen (14) calendar days of the incident giving rise to the grievance."  (ECF Nos. 33-3, at 10;

33-4, at 10) (emphasis added).  Under such terms of the CBAs, it is unclear whether the grievance and arbitration process is the exclusive means by which UPMC McKeesport can address the claims made by the Pension Fund and Union.  The CBAs only confer a right; they do not further dictate that such right must be exercised by UPMC McKeesport to the exclusion of other remedies.  It likewise not clear whether or not UPMC McKeesport's failure to file its grievance within fourteen days of the claim by the Pension Fund effected a waiver of its right to seek the CBA grievance and arbitration process.  The CBAs are silent as to what should happen if UPMC McKeesport does not file a grievance within fourteen calendar days of the incident giving rise to the grievance.  Thus, given the language of the CBAs, the Court cannot, at this stage, determine whether UPMC McKeesport has waived its right to participate in the CBA grievance and arbitration process.  As such, the Defendants' Motion to Dismiss, based upon failure to exhaust administrative remedies, will be denied.

### E.  Leave to Amend

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted).  Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)).

In this case, the Court has determined that it will dismiss UPMC McKeesport's Amended Complaint for lack of subject matter jurisdiction. Although the Court has granted UPMC McKeesport leave to amend once, the Court cannot say at this stage that amendment will be inequitable or futile as to UPMC McKeesport's claim against the Union. As such, the Court will grant UPMC McKeesport leave to amend with regard to this Court's subject matter jurisdiction to address UPMC McKeesport's Amended Complaint seeking injunctive relief to compel arbitration against the Union.

However, the Court will not grant UPMC McKeesport leave to amend its claim seeking to compel arbitration against the Pension Fund. UPMC McKeesport has failed to reference any provision in either the CBAs or the Trust Agreement to demonstrate that the Pension Fund was meant to participate the CBAs' grievance and arbitration provisions. As such, the Court will not grant UPMC McKeesport leave to amend with regard to its arbitration demand against the Pension Fund. As such, the Pension Fund will be dismissed from the case.

## IV.    Conclusion

For the reasons stated above, Defendants' Motion to Dismiss will be granted in part and denied in part. Defendants' Motion to Dismiss will be granted as to this Court's subject matter jurisdiction in the case and whether the Pension Fund is bound by the grievance and arbitration provisions of the CBAs. Defendants' Motion to Dismiss will be denied as to UPMC McKeesport's standing in the case and that UPMC McKeesport has failed to exhaust the administrative remedies contained within the CBAs.

UPMC McKeesport will not be granted leave to file a Second Amended Complaint with regard to its arbitration demand against the Pension Fund. As such, the Pension Fund will be dismissed from the case.

12

UPMC McKeesport will be granted leave to file a Second Amended Complaint with regard to its arbitration demand against the Union.  UPMC McKeesport may file a Second Amended Complaint by August 16, 2022.  If UPMC McKeesport files a Second Amended Complaint, the Union shall file its responsive pleading within fourteen days of UPMC McKeesport's filing of a Second Amended Complaint.  If no Second Amended Complaint is filed, this entire action will be dismissed.  An appropriate Order will be entered.


DATE:  August 2, 2022

Marilyn J. Horan
United States District Judge